The next case for argument is United Aeronautical Corporation v. United States Air Force and the Air National Guard. Mr. Turner, is it Almaraz? Almaraz. Almaraz. Okay, there you go. I'd like to reserve five minutes for rebuttal. Okay. I'll help you keep your eye on the clock. Thank you, Your Honor. May it please the Court. In this case, the parties do agree on one thing. In determining whether the district court has subject matter jurisdiction, the court must look beyond the form of the pleading to the substance of the claim. The jurisdictional issue turns on the source of the rights upon which the plaintiff faces his claim. The plaintiff's name is very simple here. The plaintiff alleges in his First Amendment complaint that we own certain intellectual property, which is a hard drive, and it was purchased at a foreclosure sale in 2013. The First Amendment complaint, in numerous paragraphs, takes the position that ownership belongs to the plaintiff. As in the case of any dealings with the government, there was a data rights agreement where the hard drive was handed over to the government. Counsel, we've read the briefs, and I think we're pretty familiar with the facts. If you can help me, you rely a lot on Megapulse to argue that we have jurisdiction. Yes, that was a Tucker Act case, not a CPA case. That's a big issue in this case, at least from my perspective. Why is Megapulse important in this case, given the underlying facts? Because Megapulse gives the district court the jurisdiction to grant the injunctive and declaratory relief, which we cannot get in the Court of Federal Claims. And so a claim under the Administrative Procedure Act of violation allows my client to seek the injunctive relief that we would seek if we did have subject matter jurisdiction. I guess what I'm struggling with, the Contract Dispute Act sweeps very broadly and seems to be what covers this case, unlike the Tucker Act. Do you agree that if we find that you're covered by the CDA, that Megapulse doesn't help you? Yes.  When you look at the CDA, and certainly the case cited by the government, the Todd construction case, we look at the performance of a contract. That's the analysis. Is this related to the contract? And we look at performance. There's no performance under any contract here alleged in the First Amendment complaint. The 2000 contract, which the district court seemed to rely upon, isn't relevant to this analysis. My client purchased this intellectual property at a foreclosure sale. And what we're seeing, just like Megapulse, if you read the case of Megapulse, Megapulse had multiple contracts with the government. And the government took the position that there was a, in Megapulse, the court said, or the contract said, limited data that was developed prior to the contracts being in to do, belonged to Megapulse. But under the Tucker Act, it deals with things that are, in quotes, founded upon a contract. In what way is your client's purchase of this software at a foreclosure sale founded upon a contract? It's not founded upon a contract. So why is it a Tucker Act claim? Why is it a CDA? It's not a CDA because it is a, my claim, Your Honor, is the enforcement of a trade secret, a property right. And I'm saying I have property rights that are a trade secret. And the government is taking my property without my permission and using it for any other purpose. And I'm trying to stop that from happening. It has nothing to do with the contract. The contract is the government's defense, saying I have a license just like Megapulse. I have a license to use it. Well, the difference between this case and Megapulse is that was the appeal of a granting of a summary judgment motion. At this point in the plea case, we don't even know what exactly, who has ownership rights of that data. Because the 2000 contract is not in evidence at this point. All we have is the data rights agreement. So Megapulse appears to be right on point in this case. We are not trying to allege any breach of performance of any contract. We're seeking clearly no money damages. And we're seeking to have a declaration of rights that we're the owners of the personal property. And we seek to enjoin the government from using that property. And can you do that in a TECRAI claim as opposed to a CDL claim? No. In other words, if you're right and the TECRAI covers it, can you get the relief that you seek? Under Megapulse, yes. Sure? I believe so, Your Honor. I believe if I'm in the district court, the district court can grab me the injunctive relief that I'm seeking. If I have to go, if it's a contract defense claim, I need to bring the claim in the Court of Federal Claims, and I am out of luck. I understand that. So for you, it's TECRAI or nothing? Yes. We concede that if the court determines that this is a contract defense act claim, that the district court was correct and my client doesn't have a remedy, other than to bring a claim in the Court of Federal Claims. And we've elected not to do that at this point. And if you did that, you say you're not seeking money damages, you're just seeking to, one, affirm your property right that you acquired at the foreclosure center? Yes, affirm the property rights, and also get an injunction preventing the government from using the data to develop the IMAPS system that you're developing and market it in the international community. If I have to go to the Court of Federal Claims, my remedy is money damages. In the meantime, my client is out of business. I'll have to bring that claim. Money damages isn't going to adequately protect my client or give him the adequate. It's not an adequate remedy here. The remedy is to stop the unlawful conduct and then allow my client to enforce its rights, and the government has to then get my client's permission to develop the IMAPS project. That would be the issue here. So if you look at the government's position in the case law, we look at Todd Construction, which talks about they don't cite a case that even does the analysis of whether this is a violation of the APA. They just take the Todd Construction case that says, well, when you look at whether this is a CDA claim, it's whether it's a performance of the contract. But that case is completely distinguished from the case law. Let me ask you this. I'm now looking at 28 U.S.C. 1491A2 that says under the CDA that it expressly grants the Court of Federal Claims jurisdiction over, in quotes, disputes concerning rights in intangible property. And on this case, you're dealing with data, software, and so on, which I take it to mean that's intangible property. How does it get around that? Is that a grant to the Court of Claims, an exclusive grant on this issue? Do you agree that intangible property includes software of the type you're talking about here? Yes, sir, I would. And if that's the Federal Court of Claims has exclusive jurisdiction over that, how do you get around that? Well, it's software. It's plans. I mean, you can print out the plans that are in that hard drive. So what I believe is, you know, at the time Megapulse certainly was. It's no different than Megapulse. My case is really relying on Megapulse and the fact pattern where it's the same plans, you know, pieces of paper, drawings, whatever the case may be, and the court and that. But those, with respect, those are things that are produced applying the software, right? Yes. And that's what you've got here is you own software. Well, I own software. I own plans. Quite frankly, Your Honor, based on the record in front of us, we're not sure what's actually on that hard drive. That hard drive has plans. It has drawings. So it is not just software. It's multiple things in this hard drive. When I use the term software, I'm being inexact. I shouldn't be. I really don't. It is computer data, whatever it is. It's a piece of whatever, but it's computer data that you acquire, which is intangible property. Well, it's documents, Your Honor. It's no different than we. Well, they're not stacked up as a bunch of documents. Because in the digital age, we have it in a hard drive. So it should be stacks of documents in a warehouse. It's no different than that. Well, that is different because in a warehouse, a stack of paper is not intangible property. That's tangible property. When it's data in a hard drive, that's intangible property. Well, yes and no, Your Honor, because if I could explain it. Well, if I went to take the hard drive and went to a computer and printed it out, I would then create tangible property. If I can follow up on Judge Smith's question. He referred to the statutory language there. And one of the problems with both Megapulse and Todd is they don't really grapple that much with the statutory language of the CDA or the Tucker Act. And given that neither of those cases are binding on us, maybe persuasive, and neither is the Ninth Circuit case, should we just look at the statutory language and try to do our best to figure it out? Well, I think Megapulse, because the facts are so similar to me, and I know it's not a Ninth Circuit case, but it's so similar to the facts in this case, it's certainly persuasive for the court to see. When you have the development of a property right and you hand it over to the government and the government uses it for an unintended purpose that I didn't give permission for, then the district court should be able to – my client should have the right to go into the district court, take discovery, determine if it's being used for a proper purpose, be able to prove the trade secret. And then if the whole point is to have the remedy of an injunction or declaratory relief, which is not afforded to my client under the CDA. And so I believe looking at Megapulse gives the court enough of the – the same as the facts in this case, and therefore it should follow the hold of the Megapulse. Do you want to save any time? Yes, I would like to save some time. But I think you wanted to save some time. Thank you very much, Your Honor. You're very welcome. Mr. Green. Good morning, Your Honors. Paul Green on – may it please the Court. Paul Green on behalf of the U.S. Air Force and the United States International Guard. Your Honors, there are two primary issues on this appeal. The first involves the district court's correct determination that lacks subject matter jurisdiction to interpret contracts with a federal agency. The second is the plaintiff's failure to administratively exhaust their claims by submitting a written claim to the Forest Service. So as to the first issue, the lack of subject matter jurisdiction, so the CDA applies to this case. Courts have interpreted the CDA very broadly to apply to claims relating to contracts. Does it apply to claims where the defense is based on a contract but where the claim is not? Yes, Your Honor. What's your best case for that proposition that a claim that is not rooted in contract at all but where the government would have a defense based in contract that the CDA would apply to that? Your Honor, I would point actually to the Megapulse case that plaintiffs rely on. The Megapulse case looks to the source of the rights that are at issue. And plaintiffs are, the source of the rights at issue are the contracts. Plaintiffs are specifically asking the district court to. No, it's the government. Their rights come from the fact that they have the property. They, you know, they're the owners of the intellectual property. The government claims to have permission to use the property and it's abusing it in their view. So the question from the defensive point of view, because they have the rights and they're my rights and you're using them and you come back and say, well, I have this contract here, although you actually say the contract's invalid, but you point to the contract as a defense. Now normally if we were in the analogy of like federal question jurisdiction, issues that come up in defense are irrelevant for jurisdiction. We look at the source of the rights. So I'm having a hard time seeing why the government's contract defense, the megapulse seems to say the opposite, that the contract defense doesn't get you, you know, isn't what matters for jurisdiction. I see your point, Your Honor. I think the answer is in the first amended complaint. So looking at the plaintiff's own allegations, the government's contracts are at issue. I would specifically point, Your Honor, to paragraph 29 of the first amended complaint. In paragraph 29, plaintiffs specifically allege that what they call a pre-match to proprietary data is subject to the United States' rights under the contract. So under plaintiff's own theory of the case, the only way for the court to render what they're asking for, which is that the U.S. government has ownership rights, is to reach the issue of what's in the contract. Let me go back to my federal question jurisdiction analogy. You know, and you bring a declaratory relief claim. Under Skelly Royal, you would look at how that DEC relief claim would play out. And even if the only question in the DEC relief claim is the contract issue that's in the defense, the defense doesn't count for jurisdictional purposes. You have to have the federal question in the claim and not in, and even if that's all that anyone wants to have resolved, why doesn't the same analogy apply here? I get it. They want a determination of your contract defense, but it still doesn't mean that their claims are based on the defense. Your Honor, I would again point to the contract, excuse me, the complaints, which actually attach a contract to the complaint. So the data rights agreement is in the record at ER 179 is a contract between United Aeronautical, a plaintiff in the case, and the Forest Service. And that contract in it, it not only is about the handing over this hard drive, but it's about the parties acknowledging both parties' preexisting rights. You claim the contract is invalid. Does that affect the jurisdiction analysis? It does not. So the third argument is a 12B6 argument about the enforceability of the contract. The court does not have to reach that if it determines there is no jurisdiction under the contract disputes act. If the contract is invalid, how is it of jurisdictional significance? It is significant in that the court first has to determine whether there is jurisdiction based on the allegations in the complaint. So if the court determines that this claim is related to contract, then the district court does not have jurisdiction to reach any of the interpretation of the contract issues. It would be ultimately an issue for the court's federal claims. So the data rights agreement, from your perspective, is I gather what is attached to the First Amendment complaint, is that correct? Yes, Your Honor. Because they say it's a contract. That's what we're supposed to look at for purposes of determining whether the court acclaims jurisdiction under the CDA or the Tucker Act. Is that correct? Yes, Your Honor. In addition to the data rights agreement that's attached to the complaint, there are also allegations throughout the complaint referring to not only the data rights agreement, but the dozens of prior contracts that the Forest Service and AROU entered into regarding the firefighting technology at issue. And again, specifically, paragraph 29 of the First Amendment complaint, under plaintiff's own allegations, refers to the Forest Service's rights under the contract. So the 1236 argument is nothing more than they said it's a contract. You say that's important in this case because it determines where it gets heard. But your 1236 argument is, okay, there is a contract, but we disagree about what its value is at this point. Is that correct? Exactly, Your Honor. The court doesn't have to reach the enforceability issue of the contract, but if the court were to determine that jurisdiction is a close call, the argument is that the data rights agreement isn't signed by a contracting officer, that under liberty and munition, a contract with the federal government has to be entered into with a contracting officer. Now, plaintiff's response to this has been, this is a premature issue. There should be discovery on this. The reason there shouldn't be is because they haven't sufficiently alleged that there's an enforceable contract. So the best thing they could show with discovery is that an employee of the Forest Service signed the document attached to the complaint. They're not alleging that they can show that he's a contracting officer or that he has actual authority. Do you agree with your opposing counsel that if this case has to be heard in the court of claims, that basically they can't get an injunction? Do you agree with that? Yes, Your Honor. So under the Contracts Dispute Act and also under the Tupper Act, claims related to contract or relief that can be allowed is money damages. And there was a question also asked about the APA, whether or not the APA provided jurisdiction. So I would point, Your Honor, to the Lee v. Blumenthal case, which provides that the APA doesn't affect existing jurisdiction of the district court, specifically because there's a limitation under the Contract Disputes Act. The APA doesn't provide kind of a way to go around that to provide jurisdiction. You said a minute ago that the Tucker Act also would bar injunction. Is that correct? Did I misunderstand you? Yes, Your Honor. So from your perspective, this gentleman can't get the relief they seek, regardless of whether they're before the court of claims or before the district court? Yes, Your Honor. That's because of the failure to exhaust. And specifically because plaintiffs did not submit a written claim, even though they were on notice of that through briefing on the first motion to dismiss in this case, they didn't submit a written claim to the Forest Service. And because of that, the district court nor the court of federal claims would have jurisdiction. Is that issue totally independent of all of these other issues concerning the CDA, the failure to exhaust, or is it tied to them? It's tied to the CDA. So the exhaustion requirement is a procedural requirement under the Contract Disputes Act. So if the court were to determine that the claims are related to the contract, the CDA would apply. So the exhaustion requirements of the CDA would then apply. Okay. But if we were to conclude that the CDA did not apply, would you have any arguments as to affirmance? If the CDA doesn't apply, Your Honor, that would be a challenge to the subject matter jurisdiction issue as well as the exhaustion issue. There would still be the 12B6 argument. But I think it would be important to consider how an APA claim case would proceed if this case were to remand. It would be a question of the district court looking at what the final agency's decision, which is alleged to be a letter sent in 2019, and it would be a question of whether or not that's arbitrary and precious. And so that letter isn't in the record, but it's a statement from the U.S. government saying, we have ownership rights under contract. So the court would be looking at a contractual issue in the APA rubric. So basically, in the same sense, when we get this all the time in immigration cases, if it's not exhausted, we don't have jurisdiction. But you're saying that in the same sense that there are elements of this that have to be exhausted, regardless of whether it's under the CDA or the Tucker Act. Is that right? Yes, Your Honor. That's my understanding. And, Your Honor, if I asked about the Tucker Act and the application of the Tucker Act, I would point the court to the Tucson Airport case, which is a Ninth Circuit case, as well as the district court's opinion, which actually analyzed the claims within the rubric of the Tucker Act, as well as the Contract Disputes Act. And so the Tucson Airport case was a case brought by a successor in interest to a contract, like United Aeronautical Corporation is here. And the Ninth Circuit determined that the Tucker Act applied, and because of that the claims were barred from proceeding before the district court. Because of the failure to exhaust, or for what reason? Because they related to contract, and as such, the district court did not have jurisdiction on claims relating to contract seeking equitable relief. Got it. I think you've already addressed this, but if you can, in a very pithy way, why isn't Megapulse persuasive here? In factually, it's the most analogous case, I think, either side has presented. I think you've kind of addressed it in a totality of circumstances type analysis. In a pithy way, why isn't Megapulse the most persuasive authority here? In Megapulse, the plaintiffs allege that they were seeking an injunction on rights not based in contract. So here it's when you reference the, whatever, paragraph 29. Correct. So that's how we distinguish Megapulse, because they expressly mention the contract. That's exactly right, Your Honor. And also in Megapulse footnote 47, the Megapulse plaintiffs in footnote 47 concede that if the data is subject to a contract, then the CDA would apply and the district court does not have jurisdiction. So unless there are any further questions from Your Honors. Any other questions about my colleagues? I think not. All right, thank you very much for your time. The Governor will submit. Thank you. All right, you have some rebuttal time. Thank you, Your Honor. First two, paragraph 29. Paragraph 29 certainly doesn't in any way interpret the contract or say that our claim is subject to any contract. But it attaches a contract, right? It attaches a data rights agreement. That's a contract, right? It is a contract, but if you look at the data rights agreement, the data rights agreement doesn't confer. It's not a procurement contract, as we said in our brief, but second of all, which means the CDA doesn't apply. But more important, if you read the data rights agreement, the data rights agreement just affirms that we own the data. That's all it says. It just says we own the data and we're turning over a hard drive. Forgive me. It's a contract. And the CDA has jurisdiction over claims relating to a contract. Well, it has to be a procurement contract. That's what we cited in our briefs. And items related to intangible properties. You've got both here. Again, I was making the analogy that it's really tangible, added tangible properties. Again, what concerns me, and believe me, I empathize for you, because you have a challenging problem here, but you attach this contract to the complaint. It's a contract. And if it's a contract, doesn't the government have the superior case here? No, because the contract is just to give, it's to just explain the facts of this case, that this is how the government got, became in possession of this hard drive. That's all the data rights agreement says, is they became in possession. My rights, the primary right is what I've been arguing and what megapulse talks about, is that I have ownership of these trade secrets, and they are using it for an improper purpose. The only thing the data rights agreement talked about was delivery. That's all it talks about is delivery. Why did you attach it to the complaint? We attached it to the complaint so the court could understand how they became in possession of the data. But it was related to a contract, right? It was not related to the contract, because again, the CDA to be related has to look at your performance under the contract, and I'm not suing that they're in breach under the performance of the contract. I'm suing that I have intellectual property rights that they're using for an improper purpose, and then we go into megapulse. What's your response to their argument that megapulse didn't involve a situation in which the plaintiff affirmatively in the complaint sought to obtain a ruling on the merits of the contract? Well, in megapulse, just like in this case, the discussion talks about multiple contracts entered into between the government, and it actually talks about the final contract, and it made a distinction in that final contract that said if the data was created before these contracts were entered into, and at the megapulse's expense, then they were excluded from the contracts, or the government owned information, and the government's right to use it. So what happens in megapulse is the government, megapulse takes the position that these six drawings are independent. The government says, you know what, we've determined that you used government expense, so we disagree with you, and we're going to use it for whatever purpose that we want to, and then megapulse sues the government and says that's improper. So just like in here, there's discussions of a contract. The defense as Justice Lee discussed, or no, I'm sorry, Justice Lee talked about, the defense is we have a right, we have a license to use it for whatever purpose. For note 47, he points out, does seem to suggest that if the issue about who wins is really going to be determined under the contract that sort of sorted out the rights, that that's a different case. But in my case, I don't, we're not there yet. See, the difference here between megapulse is this was a summary judgment. The contract and the interpretation were in the record. We don't have that here. We don't know exactly what these contracts say based on the pleadings in front of us. We don't know what data is on that hard drive based on the pleadings. We need to have that evidence into the record so the court can then make that determination. Okay, any other questions by my colleagues? Thank you both gentlemen for your argument. I appreciate it. The court will stand at recess for five minutes and will return. Thank you.
judges: SMITH, COLLINS, LEE